UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARRELL GLOVER, SR.,

                 Plaintiff,

                                               **Hon. Hugh B. Scott**

                                                 **18CV1186**

                 v.

                                                 **CONSENT**

ANDREW SAUL, COMMISSIONER,

                                                 **Order**

                 Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10 (plaintiff), 12 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 14, reassignment Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Darrell Glover, Sr." or "plaintiff") filed an application for disability insurance benefits on July 13, 2015 [R. 20]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and

concluded, in a written decision dated November 27, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 7, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 26, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 8, 12), and plaintiff duly replied (Docket No. 13). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 49-year-old (born July 23, 1965) with a high school education, last worked as a shaping machine set up operator and maintenance mechanic, later found by the vocational expert as medium exertion work [R. 28, 29]. He contends that he was disabled as of the onset date of February 25, 2015 [R. 20]. Defendant argues the relevant period is from December 18, 2015, when plaintiff applied for benefits, 20 C.F.R. § 416.335, through November 27, 2017, when plaintiff was found disabled (Docket No. 12, Def. Memo. at 2 & n.2[1]) [R. 30]. Plaintiff injured his knees at work in February 2015 [R. 261] (id. at 3).

Plaintiff claims the following impairments deemed severe by the ALJ: lumbar disc herniation with myelopathy; multilevel spinal stenosis with radiculopathy; cervical disc disorder with myelopathy; and bilateral knee osteoarthritis [R. 23].

---

[1]The ALJ's decision was made on November 27, 2017, not July 27, 2017, as defendant contends.

2

**MEDICAL AND VOCATIONAL EVIDENCE**

As for plaintiff's knees following his work-related injuries, in May 2016, Dr. Gregory Chiaramonte examined plaintiff and found that plaintiff could work but with restrictions from prolonged walking, standing, kneeling, squatting, and heavy lifting of over 20 pounds [R. 426, 27] (Docket No. 12, Def. Memo. at 3). The ALJ gave some weight to the doctor's opinion [R. 27]. A month later, plaintiff had knee surgery on his right knee [R. 418] and later used a cane [R. 307] (id.). By August 2015, Dr. Robert Bauer examined plaintiff and opined that plaintiff had "no formal sitting, lifting, bending, or standing restrictions. He can handle a gallon of milk" [R. 434, 27] (id. at 4). The ALJ gave little weight to this opinion, however, because plaintiff's longitudinal medical record illustrated otherwise [R. 27]. On November 2015, consultative examiner Dr. Hongbiao Liu examined plaintiff and opined that plaintiff had moderate limitation in prolonged walking, bending, and kneeling [R. 438, 27] (id.). The ALJ gave Dr. Liu's findings some weight because the record supported additional exertional, postural, and manipulative limitations not contained in Dr. Liu's opinion [R. 27]. In February 2016, plaintiff had surgery on his left knee [R. 439] (id.).

As for plaintiff's back, in the spring of 2015, plaintiff had imaging of his lumbar spine for complaints of pain, with images indicating degenerative changes in the lower facets, L5-S1 disc bulge, L4-L5 disc bulge, L3-L4 moderate central and bilateral foraminal stenosis, and L2-L3 mild central stenosis [R. 274, 297, 26] (id. at 4-5). In July 2015, plaintiff underwent surgery at L3-L5 [R. 321, 26] (id. at 5). In June 2016, plaintiff had further surgery on his back [R. 499, 26] but in November 2016 plaintiff still complained of lower back pain [R. 477, 480, 26]. Additional surgery was approved but plaintiff declined further surgical intervention at that time

[R. 484, 26]. In June 2017, plaintiff had further imaging of his back, revealing stable hardware placement and some soft tissue swelling [R. 514, 26]. In July 2017, plaintiff agreed to have further lumbar spinal surgery [R. 517, 26] (id. at 5-6).

Plaintiff also complained of upper right, non-dominant extremity issues related to his cervical spine, but the longitudinal evidence showed that he had full grip strength with that arm and hand [R. 362, 406, 437, 487, 520, 26-27], with occasions of decreased grip strength [R. 455, 457, 512, 513, 26-27] (id. at 6).

Plaintiff testified that both of his knees were deteriorating, with neck and back pain, causing numbness down his right leg and right arm [R. 53, 24]. The ALJ concluded that plaintiff's statements were not consistent with the medical evidence and other evidence [R. 25].

At Step Two, the ALJ found other claimed impairments (such as diverticulosis, pancreatitis, hypertension, anemia, obesity, and hypomagnesemia[2]) were not severe, stating that these ailments were conservatively treated and appeared well-controlled [R. 23]. The ALJ concluded that these ailments did not cause more than slight abnormalities and did "not have more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of 12 months during the period at issue," [R. 23]. At Step Three, the ALJ found that the severe impairments did not meet or equal Listings 1.02, 1.04 [R. 23].

The ALJ found that plaintiff had a residual functional capacity to perform light work with exceptions, that plaintiff can occasionally balance, stoop, kneel, crouch, and crawl; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; must use cane to ambulate; must

---

[2]An electrolyte disturbance caused when there is a low level of serum magnesium in the blood, see A. Gragossian and R. Friede, Hypomagnesemia, https://www.ncbi.nlm.nih.gov.

avoid concentrated exposure to slippery and uneven surfaces; never work in hazardous environments such as at unprotected heights or around dangerous machinery and open flames; must be in a position that would allow the person stand for approximately five minutes after sitting for approximately thirty minutes while remaining at the work station; and frequently handle and occasionally finger with the right non-dominant hand [R. 23-24].

The ALJ then found that plaintiff was unable to perform past relevant work as a shaping machine setup operator or mechanic [R. 28]. With a residual functional capacity to perform light work, the ALJ found that plaintiff was not disabled when applying the Medical-Vocational Rule 202.21 and 202.14 standards, but plaintiff's ability to perform all or substantially all the requirements for light work were impeded by additional limitations [R. 29]. The ALJ found plaintiff's age on his onset date was 49 years old and he later changed to closely approaching advanced age, 20 C.F.R. § 1563(d) [R. 29]. With this capacity and the inability to perform plaintiff's past work, the ALJ asked the vocational expert whether there were jobs in the national economy for someone in plaintiff's circumstances. The expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as a ticket taker or tanning salon attendant, both light exertion work. [R. 29-30.] As a result, the ALJ held that plaintiff was not disabled [R. 30].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

6

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. Specifically, Step Two an impairment is deemed severe "if it significantly limits an individual's ability to perform basic work activities," and will not be deemed severe if the evidence showed "only a slight abnormality or a combination of slight abnormalities that would have no more than minimal effect on an individual's ability to work" [R. 21], 20 C.F.R. § 404.1522.

If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

The Medical-Vocational grid, 20 C.F.R. Part 404, Subpart P, Appendix 2, for maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s) determines whether a claimant is or is not disabled based upon that claimant's age, education, and previous work experience, 20 C.F.R. Pt. 404, Subpt. P, Appx. 2. For an individual age 44-49 (like plaintiff at the onset date) would be found not to be disabled under the grid if that person has a high school education and skilled or semiskilled prior work, id., Rule 202.21, whereas a slightly older person (deemed one "closely approaching advanced age,"

as plaintiff was during the pendency of his application) with identical education and employment experience would be deemed disabled, id., Rule 202.14.

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

II.     Treating Physician Rule, Pre-March 2017

Plaintiff's claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one. On March 27, 2017, the current version of the SSA regulations eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a

8

treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ failed to address his degenerative and chronic conditions at Steps Two and Three, failing to account for these conditions in the Residual Functional Capacity assessment and the hypotheticals posed to the vocational expert (Docket No. 10, Pl. Memo. at 2, 15-23). Plaintiff also asserts that the ALJ improperly evaluated opinions and failed to further develop the record as needed, resulting in an unsupported residual functional capacity (id. at 2, 23-30). Plaintiff contends that the vocational expert was not needed and, based upon the Medical-Vocational grid rules, plaintiff's age, education, skills, employment history, and medical condition combined to indicate that he was disabled (id. at 29-30).

Defendant responds that substantial evidence supports the ALJ's finding that plaintiff could perform light work with additional limitations (Docket No. 12, Def. Memo. at 11-16). The findings in plaintiff's workers' compensation evaluation that he was disabled reached the ultimate decision reserved to the Commissioner that need not be considered (id. at 11, 16-17). Although plaintiff pointed out "a host of medical data and findings claiming, without

9

explanation, they show greater limitation," defendant contends that plaintiff had not pointed to any medical opinion or clinical finding showing a specific functional limitation greater than those found by the ALJ to justify a more restrictive residual functional capacity assessment (id. at 11). On the consideration at Steps Two and Three, defendant argues that the ALJ proceeded to subsequent Steps, hence any ruling by the ALJ as to severity of plaintiff's limitations was harmless (id. at 14). Furthermore, the ALJ in those later Steps did consider the nonsevere impairments claimed by plaintiff (id.). Plaintiff argues that his knee and back were not considered in Steps Two and Three, but those were found at Step Two to be severe and were considered under the Listings at Step Three (id.) [R. 23]. Defendant, however, did not address the Medical-Vocational grid finding (but cf. id. at 8 (discussing ALJ's decision at Step Five).

As noted by defendant (Docket No. 12, Def. Memo. at 11 n.5), plaintiff only raises issues on the consideration of his physical impairments and not any mental impairments. Thus, this Court will consider the physical impairments and consider any arguments about consideration of his mental impairments to have been waived, Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (see id.).

I.  Steps Two and Three Analysis of Condition

Plaintiff first argues that the record does not support finding that plaintiff could walk, stand, or meet lifting requirements for light work (Docket No. 10, Pl. Memo. at 16). Plaintiff also contends that he requires daily rest periods or off-task time not factored by the ALJ (id.). While pointing to the entire record as supporting his limitations (e.g., id. at 16, 25, 26; Docket No. 13, Pl. Reply Memo. at 1), plaintiff does not point to findings of functional limitations arising from the extensive medical record, especially for the non-severe impairment

10

hypertension, anemia, obesity, diverticulosis, pancreatitis, or hypomagnesemia, the non-severe limitations. The ALJ deemed the conditions plaintiff discusses regarding his knees and back to have been severe at Step Two and considered for Listings at Step Three. Thus, plaintiff's motion on this ground is **denied**.

II.     Medical Opinions

Plaintiff points out that the medical record, disregarded by the ALJ, showed that his lumbar spine, cervical spine, and bilateral knee conditions continued to worsen and caused chronic and debilitating limiting effects (Docket No. 10, Pl. Memo. at 26, 5-15, 16). Defendant reviewed the opinions plaintiff now claims were underappreciated; Drs. Liu and Chiaramonte both opined moderate limitations in prolonged walking, bending, and kneeling all of which support a finding of light work (Docket No. 12, Def. Memo. at 17-18). Defendant noted that the ALJ gave these opinions only some weight since they were less restrictive for plaintiff's combined limitations than ultimately was found in the residual functional capacity (id. at 18), Harrington v. Colvin, No. 14CV6044, 2015 WL 790756, at *15 (W.D.N.Y. Feb. 25, 2015) (Payson, Mag. J.). As for Dr. Capicotto and other workers' compensation doctors, defendant concludes that these opinions reached the ultimate decision of disability and applied the different standard of workers' compensation rather than the Social Security standards (id. at 16, 17).

The ALJ appropriately weighed the medical opinions in this record, noting in some instances that these opinions did not consider all of plaintiff's impairments in reaching their conclusions [R. 27]. Plaintiff's motion for judgment on the grounds of the consideration of the medical opinion evidence here is **denied**.

III.     Use of Medical-Vocational Grid

Under 20 C.F.R. § 404.1563(d), plaintiff at 49 years old on the onset date, approaching an advanced age under the Medical-Vocational grid rules (Docket No. 10, Pl. Memo. at 30). Defendant does not address the ALJ's handling of plaintiff's age and the Medical-Vocational grid. This is crucial given that, at Step Five, the burden of proof shifts to the Commissioner to show that some employment exists that plaintiff could perform in the national economy, see Bowen v. Yuckert 482 U.S. 137, 146 n.5 (1987) (see Docket No. 12, Def. Memo. at 10-11). That age was to be considered with a claimant's severe impairment and limited work experience, 20 C.F.R. § 404.1563(d). The Commissioner must "use each of the age categories that applies" to the claimant "during the period for which we must determine if you are disabled," 20 C.F.R. § 404.1563(b). These age categories are not to be applied mechanically; if a claimant is within days or months of a milestone age the Commissioner will consider the older age if it may result in a determination of disability. Under the Medical-Vocational Grid rules applicable here, whether plaintiff was disabled or not turns of whether he was a younger individual (45-49 years of age) or closely approaching advanced age (50 to 54, 20 C.F.R. § 404.1563(d)), 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, Rules 202.21, 202.14).

Here, the ALJ (before inquiring of the vocational expert about occupations someone like plaintiff could perform) applied both rules to plaintiff but found that plaintiff would be disabled, apparently applying Rule 202.21 and treating plaintiff as a younger individual, 44-49 for the entire period at issue. This period includes time after July 23, 2015, when plaintiff turned 50 [see R. 29]. Plaintiff's application was dated February 25, 2015, months before his 50th birthday when he would be closely approaching advanced age under Medical-Vocational Rule 202.14.

12

Under § 404.1563(b) and the non-mechanical application of the age categories, plaintiff should have been deemed approaching advanced age and, with his education and job experience, deemed disabled under grid Rule 202.14. On this ground, plaintiff's motion for judgment is **granted**.

IV.     Remand or Reversal for Calculation of Benefits?

Plaintiff concludes his motion seeking either remand or reversal of the Commissioner's decision (Docket No. 10, Pl. Memo. at 30; see also Docket No. 13, Pl. Reply Memo. at 10 (seeking reversal of decision)). Defendant argues that, if any error occurred, the appropriate remedy is remand for further proceedings rather than reversal for calculation of benefits (Docket No. 12, Def. Memo. at 21 n.10).

If, as here, plaintiff prevails, this Court either may remand for rehearing and further administrative proceedings or reverse the Commissioner's decision for the Commissioner to calculate benefits, 42 U.S.C. § 405(g). For calculation of benefits, the ALJ's error must be so obvious that the Court in effect declares plaintiff to be disabled and remands to calculate amount of benefits, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), or where there is no reason to conclude that additional evidence might support the Commissioner's denial of disability, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). Where there are gaps in the administrative record or when the ALJ has applied an improper legal standard, remand to develop the record is appropriate rather than for calculation of benefits, Butts, supra, 388 F.3d at 385; Parker, supra, 626 F.2d at 235.

The only error found here was the consideration of plaintiff's age at Step Five in determining under the Medical-Vocational grid whether he was disabled. This Court effectively

declared that plaintiff was disabled under the grid as a matter of law. There are no gaps in the record that would be cured upon remand. According to defendant, this case involves a closed period of December 18, 2015, through November 27, 2017, when plaintiff was found to be disabled (Docket No. 12, Def. Memo. at 2 n.2). Hence, plaintiff's benefits are for a relatively fixed amount.

Thus, this case is **reversed for calculation of benefits**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 10) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 12) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and reversed** for further proceedings consistent with the above decision to **calculate benefits**, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
January 7, 2020